IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL CASE NO. 2:13-cr-00350 |
| | § | |
| JOSE GAONA-GOMEZ and | § | |
| JOSE LOBO-LOBO | § | |

## ORDER DENYING MOTIONS TO SUPPRESS

Before the Court is Defendant Jose Lobo-Lobo's Motion to Suppress Evidence (D.E. 33) and Defendant Jose Gaona-Gomez's First Amended Motion to Suppress (D.E. 40). For the reasons set forth below, Defendants' motions to suppress are DENIED.

### FINDINGS OF FACT

Just before midnight, on the evening of April 7, 2013, Texas Department of Public Safety Trooper Daniel De La Garza was on patrol duty near the intersection of Texas State Highway 285 and U.S. Route 77 in Southern Texas. Trooper De La Garza was sitting in his patrol car in the parking lot of a restaurant located to the north of the intersection when he observed a Nissan Quest minivan with a cracked windshield pass him traveling southbound on Route 77. Trooper De La Garza explained that a cracked windshield is a safety hazard because it can distort one's view and potentially cause a traffic accident. In addition to the cracked windshield, Trooper De La Garza noted that the vehicle had an elevated rear-end, indicating that it might be involved in alien smuggling. He decided to pursue the vehicle to investigate his suspicions. The Nissan Quest was driven by Defendant Jose Gaona-Gomez [Gaona-Gomez]. Defendant Jose Lobo-Lobo [Lobo-Lobo] was riding in the passenger seat.

Trooper De La Garza pulled out of the restaurant parking lot and followed the minivan. The minivan turned right onto Highway 285, westbound toward U.S. Route 281. The Trooper ran the license plate, which indicated that it was registered out of Houston. The minivan was driving the speed limit, and besides the cracked windshield, the Trooper did not note any other traffic violations. Using the left passing lane of the highway, Trooper De La Garza pulled up next to the minivan and turned on his "alley" light to illuminate its interior. He confirmed that the windshield was cracked and observed two people in the vehicle.

Trooper De La Garza then fell in behind the vehicle and activated his overhead emergency lights. This activated the dash-mounted video camera in his patrol unit, which automatically recorded and saved the stop, as well as the preceding two minutes of video. This also initiated an audio recording of the stop. At the suppression hearing, the government introduced a DVD recording of a portion of the stop, which was admitted into evidence and played for the Court. (Gov't Ex. 1.)

While Trooper De La Garza was pursuing the minivan, United States Border Patrol Agent Jerry Flores was parked on the side of Highway 285 looking for a group of illegal immigrants that Border Patrol was tracking through the brush. Agent Flores observed the minivan go by, followed by the Trooper. Agent Flores noted that the rear of the minivan appeared lifted. Given the time of night, the fact that Highway 285 is a well-known alien smuggling corridor, the type of vehicle, and the lifted rear-end, Agent Flores suspected that the minivan might be involved in alien smuggling, and he decided to follow Trooper De La Garza to provide assistance if necessary. When Trooper De La Garza initiated the traffic stop, Agent Flores pulled in behind the DPS patrol unit and exited his vehicle. A second Border Patrol unit

with Agent Jeffrey Bennett and Agent Geraldo Espinoza, who were assigned to patrol duty on Highway 285 that evening, also stopped to lend assistance as a professional courtesy.

On the DVD of the stop, Trooper De La Garza can be seen approaching the driver's side door of the vehicle, while Agent Flores approaches the passenger's side. The Trooper asked Gaona-Gomez to step to the back of the vehicle, but Gaona-Gomez did not immediately comply with the command. The Trooper realized that Gaona-Gomez did not speak English so he spoke to him in Spanish. Trooper De La Garza informed Gaona-Gomez of the reason for the stop—a cracked windshield. He asked Gaona-Gomez for his driver's license, and Gaona-Gomez stated that he did not have one and that the vehicle belonged to his boss.

At this point, Agent Espinoza approached Gaona-Gomez to perform an immigration check. Gaona-Gomez admitted that he was a national of Mexico and was present within the United States without the proper immigration documents. Agent Bennett performed an immigration inspection on Lobo-Lobo, who did not have any identification and admitted that he was an undocumented immigrant from Honduras. Defendants were then taken into custody by the Border Patrol agents.

After Defendants were taken into custody, Trooper De La Garza began an inventory of the vehicle. He noticed a cell phone in the center console cup-holder. Believing the cell phone might belong to one of the Defendants, he gave Agent Espinoza the phone. Agent Espinoza then asked the Defendants if the cell phone belonged to them. Neither Defendant claimed the cell phone so the Agent placed it in his pocket. Agent Espinoza dropped Defendants off at the Sarita checkpoint for processing, but he kept the phone with him.

Later that night, the cell phone vibrated and Agent Espinoza answered it. He could hear brush crackling and blowing wind in the background. The person on the phone stated that he

was close to the highway, near a bridge, by a tower. Agent Espinoza recognized the location described as being close to their current position on Highway 285. Agents Espinoza and Bennett drove to the location, and using an infrared camera, Agent Bennett saw several bodies hiding in the brush. Agent Espinoza made a U-turn and stopped on the shoulder near the group of people waiting in the brush. Approximately fourteen undocumented aliens came running out of the brush, jumped the fence, and got into the back of the patrol unit.

Agent Espinoza gave the cell phone to Border Patrol intelligence agents the next morning. Gaona-Gomez later admitted in an interview that the cell phone belonged to him, and that it was given to him by his boss to assist him in the transportation of undocumented aliens from the border area back to Houston.

A Border Patrol agent took pictures of the cracked windshield after the vehicle was impounded. The government presented a photograph of the windshield, which was admitted into evidence at the suppression hearing. (Gov't Ex. 2.) The photograph was taken from the driver's seat and shows a substantial horizontal crack that runs approximately three-quarters of the way across the middle of the windshield from the passenger's side to the driver's side of the vehicle.

## LEGAL ANALYSIS

Defendants present two arguments in favor of their motions to suppress evidence. First, they argue that the traffic stop was not justified at its inception because no violation of Texas law exists for having a cracked windshield, and therefore, the seizure constituted a violation of their Fourth Amendment rights against unlawful searches and seizures. (D.E. 33 at 2–3; D.E. 40 at 5–8.) Second, Defendant Gaona-Gomez argues that Agent Espinoza's use of the cell phone constituted an unlawful, warrantless search in violation of 18 U.S.C. § 2518. (D.E. 40 at 8–9.)

Defendants request that all evidence seized be suppressed as having been obtained through an unlawful search or seizure and/or as fruit of the poisonous tree.

**A.     Traffic Stop**

The Fourth Amendment protects people against unreasonable searches and seizures of their persons and effects. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("touchstone of Fourth Amendment analysis is reasonableness").  Law enforcement officers are justified in making brief investigatory stops of motorists traveling on our public highways where they have probable cause or reasonable suspicion that a traffic violation or some other crime has occurred or is about to occur. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  In determining whether a traffic stop was lawful, the Court must look at the totality of the circumstances to determine whether there existed a particularized and objective basis for concluding that unlawful activity was underway or about to commence. *Id*.; *Whren v. United States*, 517 U.S. 806, 811–13 (1996); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Khanalizadeh*, 493 F.3d 479, 481–82 (5th Cir. 2007).

At the initiation of the traffic stop, Trooper De La Garza informed Defendant Gaona-Gomez that the reason for the stop was a cracked windshield.  During the suppression hearing, Trooper De La Garza indicated that a cracked windshield constitutes a violation of Texas Transportation Code § 547.613, which provides that "a person commits an offense . . . if the person operates a motor vehicle that has an object or material that is placed on or attached to the windshield or side or rear window and that obstructs or reduces the operator's clear view." Defendants argue that a cracked windshield does not constitute a violation of Section 547.613, and therefore, the traffic stop was unlawful. (D.E. 33 at 3; D.E. 40 at 5–8.)

Yet, even if a cracked windshield does not constitute a violation of Section 547.613, the Court finds that a windshield with a substantial crack may violate Texas Transportation Code § 547.004(a)(1), which provides that a person commits an offense by operating a vehicle that "is unsafe so as to endanger a person." *See Johnson v. Texas*, No. 01-99-00387-CR, 2000 WL 1835396, at *2 (Tex. Ct. App—Houston [1st. Dist.] Dec. 14, 2000, no pet.) (not designated for publication) ("the officer's affidavit stated that appellant's windshield had a crack in it. This alone would give the officer reasonable suspicion to stop appellant's car." (citing TEX. TRANSP. CODE §§ 547.004(a)(1), 547.613(a))). A substantial crack in a windshield may present a danger to the vehicle's operator or others because, as stated by the Trooper, it can obstruct or distort the driver's view which can increase the likelihood of an accident. Accordingly, Trooper De La Garza had reasonable suspicion of a traffic violation, allowing him to further investigate the cracked windshield as a potential safety hazard.

The fact that Trooper De La Garza did not identify Section 547.004(a)(1) as his justification during the traffic stop or the suppression hearing is immaterial. All that is required is that the officer held an objectively reasonable basis for the stop; an officer's subjective intent for making a traffic stop is irrelevant. *Whren*, 517 U.S. at 811–13. "So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment . . . ." *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1998); *see also Whren*, 517 U.S. at 813 (" 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action' " (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

In sum, based on the totality of the circumstances, the Court concludes that Trooper De La Garza had an objectively reasonable suspicion of a traffic violation, and therefore, the brief investigatory seizure did not constitute a violation of Defendants' Fourth Amendment rights under the Constitution to be free from unreasonable searches and seizures.

**B.     Cell Phone**

Next, Defendant Gaona-Gomez argues that Agent Espinoza violated his Fourth Amendment right to be free from unreasonable searches and seizures when he answered his cell phone without obtaining a search warrant pursuant to 18 U.S.C. § 2518. (D.E. 40 at 8–9.) The government argues that Defendant had no legitimate expectation of privacy in the cell phone because it constituted abandoned property. (D.E. 41 at 8–9.)

An individual has no reasonable expectation of privacy in abandoned property, and therefore, no standing to object to a search of such property. *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Colbert*, 474 F.2d 174, 186 (5th Cir. 1973) ("it is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned"). In determining whether property is abandoned for Fourth Amendment purposes, the Court must ask whether the person held a reasonable expectation of privacy in the object. *United States v. Barlow*, 17 F.3d 85, 88 (5th Cir. 1994). Furthermore, the abandonment must be voluntary, and cannot be influenced by improper police conduct. *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993). The mere presence of police officers for investigatory purposes, however, does not render an abandonment involuntary. *United States v. Quiroz-Hernandez*, 48 F.3d 858 (5th Cir. 1995); *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir.1993); *Colbert*, 474 F.2d at 176. Nor does a lawful arrest amount to such compulsion so as to render an otherwise voluntary abandonment involuntary. *Alvarez*, 6 F.3d at 289–90.

7

In the case at hand, Agent Espinoza asked both Defendants, after their arrest, whether the phone belonged to them.  Neither Defendant claimed ownership of the phone.  Defendant Gaona-Gomez also disclaimed ownership in the automobile where the phone was located, indicating that it belonged to his boss.  Given the above, the Court finds that Defendant Gaona-Gomez voluntarily abandoned the cellular phone, and that he did not possess a reasonable expectation of privacy in the phone at the time Agent Espinoza answered it.  Other courts have similarly concluded that when a suspect abandons his cell phone in a public space, he lacks standing to contest a subsequent search of the phone by officers. *United States v. Foster*, 65 Fed. App'x 41, 46 (6th Cir. 2003); *United States v. Hanner*, No. 2:05-cr-0385-02, 2007 WL 1437436, at *5 (W.D. Pa. May 14, 2007).

In sum, the Court concludes that Defendant Gaona-Gomez lacks standing to contest the search and seizure of the cell phone in the case at hand because it constituted abandoned property and he had no reasonable expectation of privacy in the object or in any incoming calls.

## CONCLUSION

For the reasons set forth above, Defendant Jose Lobo-Lobo's Motion to Suppress Evidence (D.E. 33) and Defendant Jose Gaona-Gomez's First Amended Motion to Suppress (D.E. 40) are DENIED.

ORDERED this 26th day of June 2013.

**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**